## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

LUKE RAY SCHUCHARDT,

    Plaintiff,

    v.

CRAIG SOUSA, in his individual capacity; RYAN POLLARD, in his individual capacity; and CITY OF BOISE, IDAHO,

    Defendants.

Case No. 1:24-cv-00039-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Before the Court is Defendants' Motion to Dismiss (Dkt. 15). For the reasons explained below, the Court will partially grant and partially deny the Motion.

# BACKGROUND

Because the Court considers a motion to dismiss for failure to state a claim, the facts are described here as set out by Plaintiff in his Amended Complaint (Dkt. 12). At this stage, his version of events is accepted as true. [1]

The events giving rise to this lawsuit occurred shortly after midnight on March 4, 2022, at a carwash in Boise, located at the corner of North Mitchel Street. and West Ustick Road. Though the carwash was open twenty-four hours a day, the lights in the self-service areas were off that night, with only the automatic wash bay illuminated. At approximately 12:13 AM Officer Sousa drove by on Ustick

---

[1] Much of the interaction in question was recorded on police officers' body-worn cameras. Defendants argue that the Court is "not required to accept Plaintiff's characterizations which are 'blatantly contradicted' by those videos." *Mem. Supp. Mot. Dismiss* at 13 n.8, Dkt. 15 (quoting *Scott v. Harris*, 550 U.S. 372, 378-80 (2007)). However, the Court has reviewed the footage incorporated in Plaintiff's First Amended Complaint, and it does not "blatantly contradict" Mr. Schuchardt's account. Additionally, the case cited by Defendants specifically concerns the standard when ruling on a motion for summary judgment, not a motion to dismiss. *Harris*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Defendants also suggest that the Court should consider additional body-worn camera footage from Officer Cook, who arrived at the carwash several minutes after Officer Pollard and Officer Sousa, because the complaint incorporates it by reference. Officer Cook is not mentioned by name in the First Amended Complaint, but there is a screenshot from his footage (Dkt. 12, ¶ 70), and Defendants claim that several timestamps and quotes also come from that video. *Mem. Supp. Mot. Dismiss* at 3-4, Dkt. 15. Incorporation by reference, however, applies only when a plaintiff "refers extensively" to an external document, or the document forms the basis for the claim. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The handful of apparent references to Officer Cook's footage do not rise to this level.

Road and observed a car, or possibly two, parked in the dark bays. He put out a

call for assistance to investigate a "suspicious vehicle" and then left the area.

 At around 12:30 AM Plaintiff Luke Schuchardt, a regular customer of the

carwash, pulled into one of the dark self-service wash bays. Another car was

parked in an adjacent self-service bay. The carwash did not have an "open" or

"closed" sign. It also did not have "No Loitering" or "No Trespassing" signs

posted. Mr. Schuchardt spent several minutes inside his car collecting change. The

nearby streetlamps were bright enough that he could count the coins, and he

expected to also wash his car using this ambient light. The car in the adjacent bay

was occupied by a woman known as T.C., who remained inside her vehicle.

 At 12:33 AM, Officer Sousa returned with Officer Pollard and saw two

vehicles in adjacent spots in the carwash. Without confirming that these were the

same cars as before—or having any other information to indicate how long the cars

had been there—the officers sped into the carwash with their "takedown lights" on

and parked in front of Mr. Schuchardt. Approximately two seconds later, they

exited their vehicles and began shouting commands. Mr. Schuchardt exited his car

and initially placed his hands above his head as ordered, but then he turned away

and attempted to light a cigarette. Officer Pollard told him to place his hands on the

hood of the car, and he complied. At this point, he realized that Officer Pollard had a gun pointed at him.[2]

After placing his hands on the hood of the car, Mr. Schuchardt asked what he had done wrong. Officer Pollard responded that he was being investigated for disorderly conduct, referring to a Boise anti-loitering ordinance that prohibits "[l]oitering, prowling, or wandering upon the private property of another, without lawful business, permission or invitation by the owner or the lawful occupants thereof." Boise, Idaho Code § 5-2-3(A)(2). Officer Pollard then told Mr. Schuchardt to sit on the ground without moving, and he complied. At this point, Officer Pollard holstered his gun. Mr. Schuchardt alleges that the gun was pointed at him for fifty seconds in total.

Around this point, without asking any further questions of Luke or T.C., Officer Sousa placed a request for a drug K-9. Officer Pollard patted down Mr. Schuchardt, instructed him to sit on the front bumper of a squad car, and asked his name. Mr. Schuchardt provided false information. He concedes that the seizure became lawful from this point forward.

---

[2] Defendants argue that Mr. Schuchardt is precluded from making this factual assertion because a state trial court, granting his motion to suppress evidence, determined that Officer Pollard "drew and displayed his service weapon but did not point it at Defendant." *See* Ex. 1 at 1. For reasons discussed below, the Court rejects this argument and assumes, for purposes of this decision, that Mr. Schuchardt's full description of the incident is true.

MEMORANDUM DECISION AND ORDER - 4

At the same time, Officer Sousa told T.C. to sit on the front of her car, and he began questioning her. He stated that the officers were there because the "business is open for people who are washing their cars" and she wasn't "actively washing her car." *First Am. Compl.* ¶ 108, Dkt. 12. She claimed to be cleaning the inside of her vehicle.

Eventually Officer Miller arrived at the carwash with the requested drug K-9. The dog "hit" on both vehicles, indicating the presence of contraband. On this basis, the officers searched the cars. In T.C.'s, they found cleaning supplies but no drugs or drug paraphernalia. She was permitted to leave. In Mr. Schuchardt's, they found methamphetamine, marijuana, and drug paraphernalia.

Mr. Schuchardt was charged with several possession offenses—but not disorderly conduct—in Ada County Criminal Case No. 21-22-06836. Mr. Schuchardt filed a successful motion to suppress evidence based on Fourth Amendment violations during the encounter. During the suppression hearing, Officer Sousa testified that he "suspected" disorderly conduct when he turned on his takedown lights but admitted, "I did not have any specific input until I had entered the carwash and turned on my lights to see what was going on." *First Am. Compl.* ¶ 126, Dkt. 12.  He also stated that he lacked any knowledge of how long Mr. Schuchardt's car had been there. The state trial court granted the motion to suppress and remarked, "Given the level of force displayed, coupled with the lack

of any articulable facts supporting any reasonable suspicion, it is difficult to regard the officers' conduct in this matter as [sic] other than flagrant." *First Am. Compl.* ¶ 131, Dkt. 12 (alteration in original).  Mr. Schuchardt alleges that police officers with the City of Boise have a pattern of engaging in similar suspicionless stops under the auspices of the loitering ordinance.

The charges against Mr. Schuchardt were dismissed. He subsequently brought this action under 42 U.S.C. § 1983 against Officer Sousa and Officer Pollard, in their individual capacities, and the City of Boise for alleged Fourth and Fourteenth Amendment violations. He claims that (1) the officers stopped him without reasonable suspicion; (2) the officers conducted a de facto arrest without probable cause; (3) the officers performed an unreasonable intrusive seizure; (4) Officer Pollard used excessive force; (5) Boise's loitering ordinance is facially unconstitutional; (6) alternatively, the loitering ordinance is unconstitutional as applied to him; and (7) the City's has a policy or custom of unconstitutionally employing the ordinance.

Defendants have moved to dismiss Mr. Schuchardt's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. They also assert qualified immunity for Officers Sousa and Pollard as a defense to Mr. Schuchardt's first four claims.

**LEGAL STANDARD**

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 570. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557. When assessing the plausibility of a plaintiff's claim, a court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

**ANALYSIS**

Mr. Schuchardt brings this action under 42 U.S.C. § 1983 against Officers Sousa and Pollard in their individual capacities and the City of Boise for alleged Fourth and Fourteenth Amendment violations. Defendants ask the Court to dismiss the complaint for failure to state a claim. Officers Sousa and Pollard argue that (1)

they had reasonable suspicion that Mr. Schuchardt was violating the loitering ordinance; (2) the stop was not unnecessarily long or intrusive; and (3) they have qualified immunity for all claims. The City of Boise argues that (1) Mr. Schuchardt cannot assert a facial challenge to the constitutionality of the anti-loitering ordinance; (2) Mr. Schuchardt lacks standing to assert an as-applied constitutional challenge; and (3) the ordinance is not unconstitutionally vague as applied to him.

The Court finds that all of Plaintiff's claims are plausibly pled. However, Officers Sousa and Pollard have qualified immunity for the claims of de facto arrest, unreasonably intrusive seizure, and excessive force. Accordingly, the Motion to Dismiss is granted with respect to Claims II, III, and IV and denied in all other respects.

## A. Claims Against Officer Sousa and Officer Pollard

### 1. Lack of Reasonable Suspicion

Mr. Schuchardt's first claim is that the officers initiated an investigatory stop without reasonable suspicion. Officers Sousa and Pollard argue that this allegation is not plausible because Mr. Schuchardt's presence at the dark carwash alongside another vehicle created reasonable suspicion that he was violated Boise's anti-loitering ordinance.

An individual is seized when police engage in a show of authority that would cause a reasonable person to feel that he was not free to leave or otherwise

terminate the encounter. *Florida v. Bostick*, 510 U.S. 429, 436-37 (1991). The protections of the Fourth Amendment apply even to brief investigatory stops, and a law enforcement officer conducting such a stop must have reasonable suspicion that the person has committed or is about to commit a crime. *United States v. Cortez*, 449 U.S. 411, 417 (1981). Reasonable suspicion must be present at the inception of the stop; information acquired later will not retroactively render it constitutional. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).

Reasonable suspicion exists when there are specific and articulable facts that, under the totality of the circumstances, objectively indicate criminal activity. *Cortez*, 449 U.S. at 416-17; *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000). This is a common-sense assessment that requires "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Still, there must be some "some objective manifestation" of unlawful conduct. *Cortez*, 449 U.S. at 417. Police may make reasonable inferences and "are not required to ignore the relevant characteristics of a location," but a mere "hunch" will not suffice. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). This is an objective standard based on the perspective of a reasonable officer in the situation. *Whren v. United States*, 517 U.S. 806, 812-13 (1996). Reasonable suspicion of the most minor crime can justify a stop, even if a pretext for other investigative efforts. *See id.*

Boise City Code § 5-2-3.A.2 prohibits "[l]oitering, prowling or wandering upon the private property of another, without lawful business, permission or invitation by the owner or the lawful occupants thereof." The officers argue that they had reasonable suspicion that Mr. Schuchardt was illegally loitering because (1) the carwash was dark except one automatic wash bay; (2) two vehicles were parked in adjacent dark bays; (3) Officer Sousa had observed one or two vehicles in the carwash twenty minutes earlier; (4) after arriving, the officers observed that neither car had been washed; (5) Mr. Schuchardt made "suspicious movements" and immediately exited his car; and (6) Mr. Schuchardt initially ignored Officer Pollard's instructions and reached toward his pocket or waistband. *Defs.' Mem. Supp. Mot. Dismiss* at 9, Dkt. 15 [hereinafter *Defs.' Mem.*].

As a preliminary matter, the Court must determine when the seizure began. Mr. Schuchardt contends that he was seized as soon as the officers parked in front of him with their takedown lights, meaning that several of the facts identified as a basis for reasonable suspicion were not known to the officers when the seizure began. *Pl.'s Resp.* at 7, Dkt. 17. From the moment the officers arrived, Mr. Schuchardt says, a reasonable person would not feel free to terminate the encounter due to their aggressive approach, use of takedown lights, and position directly in front of his vehicle blocking the carwash exit. *See First Am. Compl.* ¶ 167-72. The officers respond that Mr. Schuchardt was not seized because they had not parked in

a manner that physically prevented him from leaving, and their use of takedown lights did not rise to the level of a seizure. *Defs.' Rep.* at 5, Dkt. 19.

Defendants cite *United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007) to argue that "[a]n officer's illumination of a darkened area to contact individuals does not rise to the level of a seizure." *Defs.' Rep.* at 5, Dkt. 19. However, the "illumination" considered in *Washington* differs drastically from what occurred here. *Washington* involved a police officer who simply shined a flashlight into a parked car late at night after stopping a car's length behind without activating his vehicle lights. *Id.* at 767-68. These facts were central to the court's ruling that the officer's initial actions were not a seizure. *Id.* at 770.

The Ninth Circuit does not appear to have specifically considered the significance of takedown lights to a Fourth Amendment analysis. Other appellate courts, however, have consistently concluded that their use is meaningful—though they have differed on the weight to afford. *See United States v. Delaney*, 955 F.3d 1077, 1083 (D.C. Cir. 2020) ("[T]he use of such lights is suggestive of a stop."); *United States v. Packer*, 15 F.3d 654, 657 n.3 (7th Cir. 1994) ("[I]t . . . seems unlikely that a reasonable person placed in a spotlight and knowing that he was the focus of police attention would believe that he was free to maneuver his car out of the parking space."); *United States v. Tafuna*, 5 F.4th 1197, 1202 (10th Cir. 2021) (determining that use of takedown lights is "one factor to consider" but insufficient

to initiate a seizure without "other coercive behavior or circumstances"); *United States v. Tanguay*, 918 F.3d 1, 8 (1st Cir. 2019) (describing use of flashlight and floodlight to illuminate vehicle as "arguably . . . close to communicating some type of command" but short of a seizure); *United States v. Campbell-Martin*, 686 F.3d 591, 597 (8th Cir. 2021) (concluding that shining a spotlight on a vehicle was "no more intrusive . . . than knocking on the vehicle's window"); *see also People v. Tacardon*, 521 P.3d 563, 243-47 (Cal. 2022) (discussing Fourth Amendment significance of police spotlights).

Defendants also claim that Mr. Schuchardt's factual assertion that the officers parked so close that he could not leave the car wash is clearly contradicted by body-worn camera footage and therefore should not be accepted as true. *Defs.' Rep.* at 5, Dkt. 19. The Court will not take up this factual dispute because whether Mr. Schuchardt could physically drive away is beside the point at this stage of the proceedings. *See United States v. Kerr*, 817 F.2d 1384, 1837 (9th Cir. 1987) (concluding that, when an officer blocked a suspect's driveway, the "suggestion that [the suspect] could have backed around the car or ignored [the officer] defies common sense"). Mr. Schuchardt alleges—uncontradicted by the video—that two police cars drove into the carwash at a high rate of speed with their takedown lights shining and parked close to him. From these facts, it is plausible that a reasonable person would not feel free to end the encounter from the moment the officers

arrived. Accordingly, the Court accepts for purposes of this ruling that the seizure began when the officers parked at the carwash.

Officers Pollard and Sousa thus only had three facts from which to conclude that Mr. Schuchardt was loitering unlawfully: (1) the carwash was open but mostly dark; (2) two cars were in adjacent unlit self-service wash bays rather than the illuminated automatic bay; and (3) Officer Sousa had observed at least one car at the carwash twenty minutes prior.[3] The officers had no information to suggest that either of the vehicles there when they arrived were the same vehicle(s) that had been present earlier. The carwash was open, as evidenced by the illuminated automatic wash bay. Ambient light from the street was sufficiently bright that potential customers could see well enough to wash their cars. *See First Am. Compl.* ¶¶ 22-32. Assuming Plaintiff's description of the events and viewing the facts in the light most favorable to him, essentially all the officers knew was that Mr. Schuchardt and another individual were at a carwash that was open but poorly lit.

---

[3] Mr. Schuchardt claims that Officer Sousa made various remarks in the state criminal case admitting that he initially lacked reasonable suspicion and knew that that the carwash was open. *See Pl.'s Resp.* at 7-8, Dkt. 17. To this, Defendants reply that an officer's state of mind is irrelevant to Fourth Amendment analyses. *Defs.' Rep.* at 5-6, Dkt. 19 (citing *Whren*, 517 U.S. at 813). The Court agrees in the sense that it does not matter whether the loitering stop was a pretext for investigating another crime such as a drug offense—whether it was a "sham" as Plaintiff puts it. *First Am. Compl.* ¶¶ 236-41. However, this irrelevance does not apply to facts known to an officer, such as whether the business was open. *See Devenpeck v. Alford*, 543 U.S. 146, 153 ("Our cases make clear that an arresting officer's state of mind (*except for the facts that he knows*) is irrelevant to the existence of probable cause." (emphasis added)).

Under these facts, Mr. Schuchardt has plausibly alleged that the officers initiated the stop without reasonable suspicion. Indeed, a finder of fact already has come to such a conclusion in Mr. Schuchardt's state criminal case, where the trial court suppressed evidence seized in the stop due to the officer's "flagrant" Fourth Amendment violations. Ex. 1 at 8. This Court does not assume the correctness of the state court judgment, and it is entirely possible that a more developed factual record in the present matter will show that the officers possessed a valid basis for the loitering stop. However, at this stage, Mr. Schuchardt has plausibly pled that he was stopped without reasonable suspicion in violation of the Fourth Amendment.

### 2.  Unreasonable Scope of Seizure

Mr. Schuchardt's next three claims concern the scope of the seizure. He asserts that (1) the initial stop ripened into a de facto arrest lacking probable cause when he realized that Officer Pollard had a gun pointed at him; (2) the stop was unreasonably intrusive; and (3) the officers used excessive force. *First Am. Compl.* ¶¶ 251-323. Defendants assert that none of these allegations are plausible.

### i.  Claim Preclusion

Defendants argue preliminarily that collateral estoppel bars Mr. Schuchardt from contending that Officer Pollard pointed his gun because the state trial court concluded to the contrary. *Defs.' Mem.* at 10-11, Dkt. 15.

Under the Federal Full Faith and Credit statute, a federal court must "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1230 (9th Cir. 2014) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Thus, Idaho's preclusion law governs this analysis. *See Bias v. Brown*, No. 4:19-cv-00280, 2021 WL 2228491, at *7 (D. Idaho June 1, 2021).

As the Idaho Supreme Court has explained, "[i]ssue preclusion protects litigants from litigating an identical issue with the same party or its privy." *Ticor Title Co. v. Stanion*, 157 P.3d 613, 617 (Idaho 2007). The following five requirements must be met:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party . . . to the litigation.

*Id.* at 618. Defendants assert that all factors exist with regard to the gun issue, while Plaintiff contends that only the fourth is present.

In granting Mr. Schuchardt's motion to suppress, the state trial court remarked: "Officer Pollard drew and displayed his service weapon but did not point it at the Defendant." Ex. 1 at 2. That the weapon was unholstered

informed the court's findings of a Fourth Amendment violation. Whether Officer Pollard actually pointed his gun had minimal bearing on the ruling or analysis. This indicates that the first and third preclusion factors are absent. Mr. Schuchardt did not have a full and fair opportunity to litigate the issue of the gun because it was minimally significant compared to other factual matters he needed to establish. Similarly, the court's half-sentence statement that Officer Pollard did not point the gun was not an "actual decision" in any meaningful sense.[4] *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (noting that a determination in a prior case should be "essential" to that judgment for issue preclusion to apply).

The Court finds that the other preclusion factors are present – the issue of the gun was presented identically in the prior litigation, the state court reached a final judgment on the merits, and Mr. Schuchardt was a defendant in the state court proceeding.  However, this does not matter since all five of the requirements must be met before the litigation of an issue is barred by the principles of issue preclusion.

---

[4] As Mr. Schuchardt points out, the previous court's "actual decision" was that the officers performed a stop without reasonable suspicion, a conclusion that makes the officers' attempt to invoke issue preclusion somewhat ironic.

For these reasons, Mr. Schuchardt is not precluded from claiming that
Officer Pollard pointed his gun during the stop. Thus, for purposes of this
decision, the Court will assume as true his allegation that the gun was
pointed at him for fifty seconds. *First Am. Compl.* ¶ 95, Dkt. 12.

### ii. De Facto Arrest

The Court now turns to the plausibility of Mr. Schuchardt's three claims
regarding the scope of the seizure, beginning with the assertion that the encounter
ripened into a de facto arrest when Officer Pollard pointed his gun.

Under the Fourth Amendment, an investigatory stop is a seizure that
involves less coercion than a full arrest. *See Terry*, 392 U.S. at 17-18. Because a
stop is limited in duration and scope, law enforcement officers must only possess
reasonable suspicion rather than the more rigorous probable cause. *See id.* at 20-24.
However, if a seizure exceeds the bounds of an investigatory stop, it escalates to an
arrest and requires probable cause. *Florida v. Royer*, 460 U.S. 491, 506 (1983). As
the Ninth Circuit observed in *United States v. Ricardo D.*: "[W]e must be mindful
of the narrow scope of the *Terry* exception—an exception based on a brief street
encounter between police and a suspect. To do otherwise would be to risk allowing
the 'exception to swallow the general rule that Fourth Amendment seizures are
reasonable only if based on probable cause.'" 912 F.2d 337, 340 (9th Cir. 1990)
(quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)).

The Supreme Court has explained that there is no "litmus-paper test" for determining when a stop has ripened into an arrest. *Id.* Rather, courts consider "the totality of the circumstances, focusing on the perspective of the person seized rather than the subjective beliefs of the law enforcement officers." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1176 (9th Cir. 2013) (cleaned up). This assessment considers "both the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted, and the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). Under ordinary circumstances, the use of weapons and restraints in an investigatory stop violates the Fourth Amendment, but such actions can be reasonable if the suspect is uncooperative or poses a serious threat. *Id.* at 1187; *see also Rutherford v. McKissack*, No. C09-1693, 2011 WL 3421532 (W.D. Wash. Aug. 4, 2011) ("Pointing and brandishing a gun during a *Terry* stop is only permissible in extreme cases.").

In the present case, Mr. Schuchardt was suspected of loitering – a non-violent misdemeanor. He describes the following sequence of events before seeing the gun pointed at him in the first minute of the encounter: (1) the officers exited their cars and began yelling commands; (3) he exited his vehicle; (4) he put his hands above his head as ordered; (5) he turned away and tried to light a cigarette;

and (6) he put his hands on the hood of the car in response to another command. *First Am. Compl.* ¶¶ 73-88, Dkt. 12. Overall, these facts plausibly suggest a high level of intrusion coupled with a low threat. As such, Mr. Schuchardt has adequately pled that he was subject to de facto arrest.

### iii.  Intrusiveness

Mr. Schuchardt's next claim, that the seizure was unreasonably intrusive, closely relates to the above analysis. "Investigative stops based upon suspicion short of probable cause are . . . constitutionally permissible only where the means utilized are the least intrusive reasonably available." *Kraus v. Pierce County*, 793 F.2d 1105, 1108 (9th Cir. 1986). This assessment considers: "(1) 'the severity of the crime at issue'; (2) whether the suspects pose 'an immediate threat to the safety of the officers or others'; and (3) whether the suspects are 'actively resisting arrest or attempting to evade arrest by flight.'" *Chinaryan v. City of Los Angeles*, No. 21-56237, 2024 WL 3803301, at *6 (9th Cir. Aug. 14, 2024) (quoting *Green v. City & Cnty. of San Fransisco*, 751 F.3d 1039, 1049 (9th Cir. 2014)).

Mr. Schuchardt alleges that the officers acted unreasonably by approaching in separate cars—the "wolfpack method"—at a high rate of speed, activating their takedown lights, parking close to his car, shouting commands, and pointing a gun at him. *First Am. Compl*. ¶¶ 297-98. The officers suspected a non-violent misdemeanor, so the severity of the crime is minimal. Mr. Schuchardt admits to

trying to light a cigarette contrary to Officer Pollard's orders, but no other facts in his complaint suggest a possible threat to officer safety. And he was neither resisting arrest nor attempting to flee. Whether the officer's actions were reasonable is a highly fact-dependent question, and the facts here are ambiguous and messy. Viewing them in the light most favorable to Plaintiff, he has plausibly alleged an unreasonably intrusive seizure.

### iv.  Excessive Force

Mr. Schuchardt's final claim is that Officer Pollard used excessive force by pointing the gun at him for fifty seconds. To assess whether an officer utilized an unreasonable degree of force in a seizure, courts use an objective standard based on the totality of the circumstances. *Lombardo v. City of Saint Louis*, 141 S. Ct. 2239, 2241 (2021). Considerations include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 297 (2015)).

Mr. Schuchardt does not allege that Officer Pollard physically injured him or made any threats. Still, assuming that the gun was pointed as Mr. Schuchardt describes, excessive force is plausible for the same reasons as his other scope-of-

seizure claims. *See Thompson v. Rahr*, 885 F.3d 582, 584 (9th Cir. 2018) (finding excessive force during arrest on a weapons charge when officer pointed a loaded gun at compliant, unarmed suspect's head).

### 3. Qualified Immunity

Officer Pollard and Officer Sousa next argue that they are entitled to qualified immunity even if Mr. Schuchardt has brought viable claims against them.

The Supreme Court created qualified immunity to shield government officials from civil liability for rights violations if the right was not "clearly established" at the time. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine seeks to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

To qualify as "clearly established," a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The right must also be established at a reasonable level of specificity: "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 742 (2011)). This does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* As

the Supreme Court summed up, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Regarding Mr. Schuchardt's first claim of an investigative stop without reasonable suspicion, the officers assert qualified immunity based on their reliance on the anti-loitering statute. *Defs.' Mem.* at 14, Dkt. 15. They argue that if the ordinance is found unconstitutional—an argument addressed below—they have immunity because no existing precedent existed to alert them that they could not use it as a basis for stopping Mr. Schuchardt. *Id.* Defendants are correct that the officers could legitimately rely on the ordinance for the establishment of reasonable suspicion, and they are immune from any claims made on that basis. *See Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("[W]here a police officer has probable cause to arrest someone under a statute that a reasonable officer could believe is constitutional, the officer will be immune from liability even if the statute is later held to be unconstitutional."). But Mr. Schuchardt plausibly alleges that he was arrested without reasonable suspicion that he was violating the anti-loitering statute. Caselaw clearly establishes that presence in a possibly suspicious location—the only evidence that the officers possessed, viewing the facts in the light most favorable to Plaintiff—does not alone give rise to reasonable suspicion. *See Wardlow*, 528 U.S. at 124.

Defendants also raise qualified immunity regarding Mr. Schuchardt's three scope-of-seizure claims, arguing that no precedent at the time clearly established their conduct as unreasonable. Mr. Schuchardt responds by first asking the Court to "declare the doctrine of qualified immunity invalid." *Pl.'s Resp.* at 17, Dkt. 17. To justify this sweeping request, he alludes briefly to the history of § 1983,[5] scholarship condemning qualified immunity, and a recent decision from the U.S. District Court for the Southern District of Mississippi concluding that the doctrine is illegitimate. *Id.* The history of qualified immunity is fraught; the scholarship cited is rigorous; and the district court opinion is thoughtful and moving. However, none of it is authoritative precedent for this Court. Binding law from the Supreme Court and Ninth Circuit has unambiguously recognized qualified immunity. That is the law the Court is required to rely upon.

Qualified immunity for Mr. Schuchardt's second through fourth claims presents a somewhat close question. The Ninth Circuit has clearly established "that if the *Terry*-stop suspects are cooperative and the officers do not have specific information that they are armed or specific information linking them to a recent or

---

[5] The text of § 1983, initially called the Ku Klux Klan Act, does not set out any form of immunity for government officials. Recent scholarship has suggested that the original text of the Act went further by explicitly displacing common law defenses and providing that claims would be viable notwithstanding any law or custom to the contrary. *See Green v. Thomas*, No. 3:23-CV-126, 2024 WL 2269133 (S.D. Miss. May 20, 2024) (citing Alexandar A. Reinhart, *Qualified Immunity's Flawed Foundation*, 111 Calif. L. Rev. 201 (2023)).

inchoate dangerous crime, the use of such aggressive and highly intrusive tactics is not warranted." *Green*, 751 F.3d at 1052 (quoting *Washington*, 98 F.3d at 1192). Mr. Schuchardt was not suspected of a dangerous crime, but he admits that he tried to light a cigarette in violation of the officers' orders to keep his hands in the air. *First Am. Compl.* ¶ 79, Dkt. 12. Although he argues that this does not constitute non-compliance, *id.* ¶ 84, his conduct plainly went against the officers' commands. This is critical, because the only precedent establishing a constitutional violation when weapons are used during the stop of a generally compliant suspect, involved a suspect who was fully cooperative. Indeed, the Ninth Circuit has repeatedly emphasized the "need for unquestioned obedience to lawful commands during a car stop." *Thompson*, 885 F.3d at 89 (quoting *Gonzales v. City of Anaheim*, 747 F.3d 789, 804 (9th Cir. 2014)). On this basis, Officers Sousa and Pollard are entitled to qualified immunity on claims of de facto arrest, unreasonably intrusive seizure, and excessive force. Accordingly, Plaintiff's claims two through four are dismissed.

### B. Claims Against City of Boise

Mr. Schuchardt next brings three claims against the City of Boise pursuant to *Monell v. Department of Social Services*, which held that § 1983 permits actions against local governing bodies where the alleged constitutional violation "implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by the body's officers." 436 U.S. 658, 690 (1978). Mr. Schuchardt asserts that (1) the anti-loitering ordinance is facially unconstitutional; (2) the ordinance is unconstitutional as applied to his conduct; and (3) the City failed to train police officers on how to enforce the ordinance in a constitutional manner. Defendants move to dismiss each claim.

### 1. Facial Constitutionality

Boise's anti-loitering ordinance provides that "[l]oitering, prowling, or wandering upon the private property of another, without lawful business, permission or invitation by the owner or the lawful occupants thereof" is a misdemeanor punishable by up to six months in jail and a $1,000 fine. Boise, Idaho Code § 5-2-3(A)(2). Mr. Schuchardt claims that the ordinance on its face is unconstitutionally vague and criminalizes constitutionally protected conduct. The City of Boise argues that he cannot assert a facial vagueness challenge because the ordinance does not implicate the First Amendment, nor does it implicate any other constitutionally protected activity.

### i. Vagueness

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Thus, a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is

prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 356 (1983).

The City contends that a plaintiff may only assert a facial vagueness challenge to statutes implicating First Amendment interests, and it cites a number of Ninth Circuit cases that appear to make this point. *Defs.' Mem.* at 16, Dkt. 15; *see Tucson v. City of Seattle*, 91 F.4th 1318, 1329 (9th Cir. 2024); *Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019); *United States v. Kim*, 449 F.3d 933, 942 (9th Cir. 2006). However, the underlying law is significantly more complicated—as the Ninth Circuit has explained. The opinion in *Kashem v. Barr*, 941 F.3d at 375, is worth quoting at length:

> "[V]agueness challenges to statutes that do not involve First Amendment violations must be examined as applied to the defendant." *Kim*, 449 F.3d at 942; *see Maynard*, 486 U.S. at 361. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates*, 455 U.S. at 495. Thus, as a general matter, a defendant who cannot sustain an as-applied vagueness challenge to a statute cannot be the one to make a facial vagueness challenge to the statute.

In other words, there is a "well established" rule "that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975). However, the operative concern is whether the person challenging the law engaged in conduct that the law clearly proscribed. If so, that individual may not

bring a facial vagueness challenge because "[o]bjections to vagueness under the

Due Process Clause rest on the lack of notice, and hence may be overcome in any

specific case where reasonable persons would know that their conduct is at risk."

*Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).

On the other hand, if an individual engages in conduct *not* clearly

proscribed—as is, allegedly, the case for Mr. Schuchardt—he may also have a

basis for a facial vagueness challenge. *See Powell*, 423 U.S. at 319-20 ("The Court

of Appeals dealt with the statute generally, rather than as applied to respondent in

this case. It must necessarily have concluded, therefore, that the prohibition . . .

proscribed no comprehensible course of conduct at all."); *City of Chicago v.

Morales*, 527 U.S. 41, 78 n.1 (1999) (Scalia, J., dissenting) ("[A] facial attack,

since it requires unconstitutionality in all circumstances, necessarily presumes that

the litigant presently before the court would be able to sustain an as-applied

challenge."). Indeed, although facial challenges are disfavored, numerous criminal

laws have been invalidated for vagueness on due process grounds despite not

impacting the First Amendment. *See Johnson v. United States*, 576 U.S. 591, 602-

03 (2015) (collecting cases). In *City of Chicago v. Morales*, for example, the

Supreme Court struck down an anti-loitering ordinance and explained, "[E]ven if

an enactment does not reach a substantial amount of constitutionally protected

conduct, it may be impermissibly vague because it fails to establish standards for

the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." 527 U.S. at 52-53 (plurality opinion).[6]

Thus, the City is incorrect to argue that Mr. Schuchardt's facial vagueness challenge fails for not implicating the First Amendment. He has plausibly plead that the ordinance on its face is unconstitutionally vague because it fails to establish constitutionally sufficient notice and enforcement standards.

### ii.   Constitutionally Protected Activity

The other facet of Mr. Schuchardt's argument is that the ordinance is unconstitutional on non-vagueness grounds because it criminalizes the constitutionally protected right to loiter for innocent purposes on private property held open to the public. This contention is unpersuasive. In *Morales*, the Supreme Court recognized that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause." 527 U.S. at 53. However, the ordinance at issue there applied specifically to public places, and the plurality consistently discussed the freedom to loiter in conjunction with presence in public.

---

[6] The Supreme Court has further lowered the threshold for a facial vagueness challenge since *Morales*. In *Johnson v. United States*, where the Court voided the residual clause of the Armed Career Criminal Act, the majority explained that "although statements in some of our opinions could be read to suggest otherwise, our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." 576 U.S. 591, 602 (2015). This principle provides additional justification for allowing Mr. Schuchardt to proceed with his claim.

*See id.* at 53-54. Plaintiff simply misconstrues *Morales* here.[7] However, because he has pled a plausible facial challenge based on vagueness, the Motion to Dismiss is denied for this claim.

### 2. Constitutionality As-Applied

Mr. Schuchardt alternatively claims that the loitering ordinance is unconstitutional as applied to him. The City contends that he lacks standing to assert this and that, regardless, the as-applied challenge fails because the ordinance sufficiently provides notice and limits law enforcement discretion. *Defs.' Mem.* at 17-18, Dkt. 15.

A plaintiff has standing to bring an as-applied constitutional challenge if he alleges "(1) a 'distinct and palpable' injury-in-fact that is (2) 'fairly traceable' to the challenged provision or interpretation and (3) would 'likely be redressed' by a favorable decision." *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033 (9th Cir. 2006) (quoting *Allen v. Wright*, 468 U.S. 737, 750-51 (1984)). To meet the injury-in-fact requirement, the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). When standing is proposed on the basis of a past injury,

---

[7] Mr. Schuchardt also misconstrues *Morales* by claiming that loitering ordinances must include a separate standard-alone crime to be constitutional. *Pl.'s Resp.* at 18, Dkt. 17. Rather, the *Morales* plurality merely observed that "state courts have uniformly invalidated laws that do not join the term 'loitering' with a second specific element of the crime." 527 U.S. at 57-58.

redressability hinges upon "the likelihood of a recurrence of the allegedly unlawful conduct." *City of Los Angeles v. Lyons*, 461 95, 107 n.8 (1983).

Mr. Schuchardt has pled that he is a regular night-time customer of the carwash where he was seized and that he intends to continue using that carwash at night. *First Am. Compl.* ¶¶ 144-47, Dkt. 12. It is plausible that lights in the carwash might again be non-functional. Even under a very narrow understanding of recurrence—limited to that carwash and not any other unusually dark 24-hour business—he has sufficiently alleged a redressable injury based on the likelihood that he could again be seized pursuant to the loitering ordinance under similar circumstances. Thus, he has standing to bring this as-applied challenge.

The City next argues that Schuchardt's claims should be dismissed because the ordinance does not encourage discriminatory enforcement, and a person of normal intelligence would understand what it prohibits. *Defs.' Mem.* at 18-19, Dkt. 15. These are fact-based arguments that cannot be determined at this stage in the proceedings. Accordingly, the Motion to Dismiss is denied as to this claim.

### 3. Failure to Train

Finally, Plaintiff alleges that the City's failure to train officers on the loitering ordinance has created an unwritten municipal policy that is unconstitutional. *First Am. Compl.* ¶ 377-412. Defendant's Motion to Dismiss does not address this claim except to assert that there is no *Monell* liability because there

is no underlying constitutional violation. However, as explained above, Mr. Schuchardt has plausibly alleged both that he was stopped under the loitering ordinance without reasonable suspicion and that the ordinance is unconstitutional. Because Defendant does not make any further arguments for dismissal, the Motion is denied as to the failure-to-train claim.

## ORDER

**IT IS ORDERED THAT:**

Defendants' Motion to Dismiss (Dkt. 15) is **GRANTED in part and DENIED in part**, as follows:

1.  Plaintiff's Claims II, III, and IV are **DISMISSED**;

2.  The Motion is otherwise **DENIED** in all respects.

DATED: October 4, 2024

B. Lynn Winmill
U.S. District Court Judge