UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LUKE RAY SCHUCHARDT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CRAIG SOUSA, in his individual capacity; RYAN POLLARD, in his individual capacity; and CITY OF BOISE, IDAHO,<br><br>　　　　Defendants. | Case No. 1:24-cv-00039-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The constitutional right to due process ensures that "ours is a government of laws, not of men." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 646 (1952) (Jackson, J., concurring). One foundational due process protection is the principle that our criminal laws must clearly define what they prohibit. This clarity has two functions. First, it ensures that the public has fair notice of what conduct is illegal. Second, it prevents arbitrary or discriminatory law enforcement by providing explicit standards to guide police, judges, and juries. A law that fails to provide fair notice or sufficient enforcement standards is void for vagueness.

The City of Boise, like many localities, has adopted an antiloitering

ordinance. Boise City Code § 5-2-3(A)(2) prohibits "loitering, prowling or wandering upon the private property of another, without lawful business, permission or invitation by the owner or the lawful occupants thereof." Plaintiff Luke Schuchardt was detained on the suspicion that he was unlawfully loitering at a dark car wash late at night. He now argues that the ordinance is void on its face due to vagueness. Both parties have moved for summary judgment on this issue, and the Court held oral arguments on July 23, 2025.

This is a difficult case that raises several competing constitutional interests. In general, federal courts must tread lightly when considering broad challenges to democratically enacted laws. Further, "the preservation of liberty depends in part on the maintenance of social order," *Houston v. Hill*, 482 U.S. 451, 471-72 (1987), and the antiloitering ordinance can further this goal. In the present case, for instance, overwhelming evidence suggests that Mr. Schuchardt was at the car wash to engage in a drug transaction—substantially more serious criminal activity which was only brought to light because law enforcement initiated a stop based on suspicion of unlawful loitering. The power of the ordinance is the vast discretion that it affords police officers. But this is also its fatal flaw. For the reasons set out below, the Court holds that Boise City Code § 5-2-3(A)(2) is unconstitutionally vague because it fails to provide minimal standards to govern law enforcement.

## BACKGROUND

The case stems from an encounter between Mr. Schuchardt and Boise law enforcement at a 24/7 car wash shortly after midnight on March 4, 2022. Although the car wash was theoretically open, almost all the lights were off that night. Both parties agree that Mr. Schuchardt was parked in an unilluminated manual wash bay, though they dispute exactly how dark it was. Another car, which belonged to a woman known as T.C., was parked in an adjacent bay, also unilluminated. Both parties agree that Mr. Schuchardt had previously met T.C.

From here, the accounts diverge. Mr. Schuchardt says that he arrived at the car wash, began searching his car for change, and did not even realize that T.C. was there. The City of Boise contends, based on police reports, that Mr. Schuchardt arrived at the car wash, took out methamphetamine, put on a latex glove, and unbuckled his pants. From this, the City infers that he was at the car wash to engage in a sex-for-drugs transaction with T.C. Mr. Schuchardt has submitted an affidavit attesting to his version of events, though he repeatedly invoked the Fifth Amendment at a deposition when the City asked about the drugs found in his car and his relationship with T.C.

Regardless, law enforcement arrived at the car wash at approximately 12:30 AM and detained Mr. Schuchardt and T.C. on the suspicion that they were violating the anti-loitering ordinance. The parties disagree about some details of

that encounter, but those facts are irrelevant here. The officers eventually determined that Mr. Schuchardt had a warrant for his arrest, and a drug dog gave a positive alert on his vehicle. After searching the vehicle, the officers found marijuana and methamphetamine.

Mr. Schuchardt was charged with drug possession in state court. *See State v. Schuchardt*, CR01-22-06836 (Ada County Dist. Ct.). That case was dismissed after the trial judge found that the police had violated the Fourth Amendment by initiating the stop without reasonable suspicion. Mr. Schuchardt then brought the present lawsuit against the City of Boise and his arresting officers, alleging various constitutional violations. The only issue currently before the Court is the facial constitutionality of the antiloitering ordinance.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims" and thereby prevent these matters "from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986). A case that presents "a pure question of law" is particularly amenable to summary judgment. *Schrader v. Idaho Dep't of Health & Welfare*, 768 F.2d 1107,

1110 (9th Cir. 1985). Where, as here, the parties submit cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## ANALYSIS

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The broad contours of this doctrine have been well-established for a century. *See, e.g.*, *Connally v. Gen. Const. Co.*, 269 U.S. 385 (1926). First, a person must receive fair notice of legal prohibitions. "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. Second, a statute must provide explicit standards for enforcement. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* Thus, a statute must define its prohibitions "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

Within these broad parameters, however, there is debate and ambiguity. One area of confusion concerns a plaintiff's standing to bring a facial challenge—typically disfavored—rather than disputing the law only as applied to his own conduct. In this regard, the Court concludes that Mr. Schuchardt may bring a facial challenge based on the potential for arbitrary enforcement but not lack of fair notice. On the merits, the Court finds that City Code 5-2-3(A)(2) is unconstitutionally vague because it fails to provide sufficient standards for law enforcement. The analysis of each issue is set out in detail below.

## A.    Standing

The Court must first determine whether Mr. Schuchardt has standing for a facial challenge to the antiloitering ordinance. The City of Boise argues that he was at the car wash for a drug transaction, which unambiguously falls within the ordinance's gambit. Because the ordinance is not vague in this situation, the City says, Mr. Schuchardt cannot assert that it is void on its face. Mr. Schuchardt objects to both the City's factual account and its legal conclusions. The Court will begin by describing the somewhat convoluted rules governing standing for facial vagueness challenges. The Court will then analyze whether Mr. Schuchardt has standing for a facial challenge based on either fair notice or arbitrary enforcement, which requires resolving several factual disputes.

### 1.  The "Clearly Prohibited" Rule

In general, "[a] litigant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge." *Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019); *see Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). This is known as the "clearly prohibited" or "clearly proscribed" rule. The restriction extends from traditional standing principles: "courts are not roving commissions assigned to pass judgement on the validity of the Nation's laws," and constitutional judgments "are justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court." *Kashem*, 941 F.3d at 375 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973)). As result, courts must usually examine a challenged statute as applied to the plaintiff before considering whether the statute is void on its face. *Id.*

In *Kashem*, the Ninth Circuit indicated that this rule applies to facial vagueness challenges rooted in both fair notice and arbitrary enforcement. *Id.*; *see also United States v. Hasson*, 26 F.4th 610, 618-19 (4th Cir. 2022) ("When the challenged statute clearly proscribes a defendant's conduct neither of these rationales is implicated. It would untether the vagueness doctrine from its moorings to permit a facial vagueness challenge in such a case."). For either theory, a plaintiff unable to sustain an as-applied challenge will generally not be allowed to assert a facial claim. The nature of the as-applied inquiry, however,

differs depending on the basis for the challenge.

For a vagueness claim based on notice, the question is whether the plaintiff's actual conduct clearly violated the law in question. *See Kashem*, 941 F.3d at 373 ("[E]ach of *these plaintiffs* had fair notice that *his conduct* would raise suspicion under the criteria."); *see also Parker v. Levy*, 417 U.S. 733, 756 (1974) (explaining that "one who has received fair warning of the criminality of his own conduct" cannot then attack a statute on the basis that "the language would not give similar fair warning with respect to other conduct"). For an arbitrary enforcement claim, on the other hand, the conduct must be examined from the perspective of law enforcement agents because the key concern is whether their discretion was sufficiently limited under the circumstances. *See Kashem*, 941 F.3d at 374 ("[T]he No Fly List criteria are governed by constitutionally sufficient standards, at least applied to these plaintiffs."). This delineation between a plaintiff's objective conduct and the conduct as known to law enforcement reflects the two distinct constitutional injuries that can underly a vagueness challenge. *See United States v. Stupka*, 418 F. Supp. 3d 402, 411 (N.D. Iowa 2019) ("[W]hether conduct is clearly proscribed under the terms of the statute reveals little about whether the statutory language, or the process through which it is applied, has sufficiently clear standards to prevent arbitrary enforcement.").

### 2.  Standing for Challenge Based on Notice

The analysis now pivots to the facts of this case, beginning with Mr. Schuchardt's standing to bring a challenge based on lack of fair notice. Here the question is whether Mr. Schuchardt's actual conduct at the car wash was clearly proscribed by the anti-loitering ordinance. This in turn requires the Court to determine what exactly he was doing that night. The City of Boise argues that he was there to engage in a sex-for-drugs transaction, while Mr. Schuchardt insists that he was simply there to wash his car.

With its standing argument, the City of Boise has made a factual attack on the Court's jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Under these circumstances, the Court may make factual inquiries and need not presume the truthfulness of Mr. Schuchardt's allegations, though genuine factual disputes must be resolved in his favor. *See Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). This is effectively the standard of summary judgement. *Id.* Thus, a dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009).

### a. Factual Findings

Both parties have submitted evidence to substantiate their version of events, but there is a dispute over what the Court should consider. Mr. Schuchardt has filed an affidavit attesting that he went to the car wash solely to wash his Jeep and not for any illegal purposes, but he invoked the Fifth Amendment when asked during a deposition about the drugs found in the vehicle. The City of Boise argues that this is an abuse of the privilege and seeks to strike the affidavit. *Def.'s Rep.* at 1-2, Dkt. 41.

The analysis here must begin with the Fifth Amendment issue, since that will determine the record before the Court. The Fifth Amendment's privilege against self-incrimination applies to both criminal and civil cases, and it can be invoked whenever a question could create the possibility of prosecution. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). But a party may not wield the Fifth Amendment selectively to avoid the adversarial probing of his testimony. Thus, the privilege "cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 640 (9th Cir. 2012) (cleaned up). Such a strategy "prevent[s] any adversarial testing of the truth of that testimony" and compromises "the integrity and truth-seeking function of the judicial system." *Id.* In response, it is appropriate for the trial court to strike the statements in question. *Id.*

Mr. Schuchardt's affidavit is a textbook example of Fifth Amendment abuse. He testified that "the only reason I went to the 24-Hour Car Wash was to wash the Jeep" but asserted the Fifth Amendment when asked questions such as whether he placed methamphetamine on his car's steering column, whether he intended to use or sell methamphetamine at the car wash, and whether he intended to exchange methamphetamine for sexual activity. *Ex. 1*, *Schuchardt Decl.* ¶ 32, Dkt. 30-4; *Ex. 5*, *Schuchardt Dep. Tr.* at 52-57, Dkt. 30-6. He has wielded the privilege as both a sword and shield, insisting that the Court consider his version of events while refusing to allow the City of Boise to explore the absurdity of his account. For this reason, the Court will strike the portions of the affidavit concerning Mr. Schuchardt's intent at the car wash. *See* Dkt. 30-4.

It is also appropriate to draw an adverse inference from his use of the Fifth Amendment. In the civil context, an adverse inference can "be drawn when independent evidence exists of the fact to which the party refuses to answer." *Glanzer*, 232 F.3d at 1264. Here, to start, there is substantial independent evidence that Mr. Schuchardt handled methamphetamine shortly after arriving at the car wash. For instance, he was in sole possession of the vehicle, the drugs were on the car's steering column, and he had on a nitrile glove. There is also evidence that Mr. Schuchardt intended to do a drug transaction with T.C. The two had previously met, T.C. struggled with methamphetamine addiction, and she told an officer that

she was at the car wash because Mr. Schuchardt "had to do a few more things"—a statement that plainly contradicts his insistence that they just happened to be cleaning cars beside each other in the dark in the middle of an Idaho winter night. *Ex. 2*, *Sousa Body Camera Footage* at 7:30, Dkt. 30. The Court will thus draw an adverse inference from Mr. Schuchardt's refusal to answer questions about his handling of the drugs and his intent to exchange them at the car wash.

Based on this record, the undisputed facts show that Mr. Schuchardt went to the car wash for a drug transaction with T.C. As the Court will detail below, this is enough to establish that he had fair notice that his conduct would violate the antiloitering ordinance. For this reason, it is unnecessary to resolve the more sensational allegations about his intent to trade drugs for sexual activity.

### b. Conclusions of Law

As explained above, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Kashem*, 941 F.3d at 375 (quoting *Hoffman Estates*, 455 U.S. at 495). For Mr. Schuchardt's vagueness challenge based on the notice theory, the question is whether the antiloitering ordinance clearly prohibits a drug transaction at a car wash. It does.

The ordinance forbids "loitering, prowling or wandering upon the private property of another, without lawful business, permission or invitation by the owner

or the lawful occupants thereof." "Loiter" is commonly defined as "to delay an activity with idle stops and pauses" and "to remain in an area for no obvious reason."[1] This clearly characterizes a person parked at a car wash without washing their car. "Without lawful business"—though quite ambiguous under some circumstances, as set out below—undoubtedly includes explicitly illegal activities like drug transactions.

Thus, the Court finds that the antiloitering ordinance clearly prohibited Mr. Schuchardt's actual conduct at the car wash. For this reason, he lacks standing for a facial challenge to the ordinance based on lack of notice.

### 3. Standing for Challenge Based on Arbitrary Enforcement

Mr. Schuchardt can, however, proceed with a facial challenge rooted in arbitrary enforcement. Here the threshold question is whether the antiloitering ordinance provided the authorities with an ascertainable standard for enforcement under these circumstances. Put differently, could the police determine that Mr. Schuchardt was clearly violating the ordinance?

They could not. At the outset of the encounter, the officers knew only that one or two cars were parked in 24/7 car wash that was dark but presumably open. As set out above, Mr. Schuchardt was objectively at the car wash "without lawful

---

[1] *Loiter*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/loiter.

business" because he was there for an illegal drug transaction. But police did not know that he had drugs out until they had already detained him on the suspicion that he was unlawfully loitering. Before that, it seems the officers only had reason to suspect that he was parked at a dark car wash and not washing his car.

Through this lens, it is far from clear that the antiloitering ordinance prohibits briefly parking at a car wash without cleaning one's car. The officers could perhaps say that Mr. Schuchardt was there without obvious purpose, but was he also "without lawful business"? In this circumstance, the ordinance does not appear to provide "explicit standards" for distinguishing someone loitering "without lawful business" from a person engaging in a lawful detour or dawdle.[2] *See Grayned*, 408 U.S. at 108. The Fourth Amendment issues with Mr. Schuchardt's detention—which led to the dismissal of the criminal case against him—further highlight the nebulousness of the ordinance. *See State v. Schuchardt*, CR01-22-06836 (Ada County Dist. Ct. July 27, 2022).

The facts of this case thus indicate that Mr. Schuchardt could sustain an as-applied vagueness challenge. That is not the issue currently before the Court, but it does mean that Mr. Schuchardt's injury is non-hypothetical. He complains of an

---

[2] The Court is cautious with its conclusions here because the parties have not briefed Mr. Schuchardt's as-applied challenge to the loitering ordinance. This is a result of a bifurcation of summary judgment that, in retrospect, was probably a mistake. But the facts are sufficiently developed for the Court to rule on Mr. Schuchardt's standing for a facial challenge.

arbitrary enforcement harm that he himself suffered, not something that might happen to imagined plaintiffs under different circumstances. For this reason, it is appropriate to proceed to the facial challenge.

### B.    Merits

Thus, the Court at last turns to the merits of Mr. Schuchardt's claim that Boise's antiloitering ordinance is unconstitutionally vague due to the potential for arbitrary or discriminatory enforcement. A criminal law is void for vagueness on this ground "if it lacks any ascertainable standard for inclusion and exclusion, thereby authorizing or encouraging the authorities to arbitrarily prosecute one class of persons instead of another." *Tucson v. City of Seatle*, 91 F.4th 1318, 1329 (9th Cir. 2024) (cleaned up). The Supreme Court has recognized this as the "more important aspect of vagueness doctrine." *Kolender*, 461 U.S. at 358. Without minimal guidelines to govern law enforcement, the "standardless sweep" of a statute "allows policemen, prosecutors, and juries to pursue their personal predilections." *Smith v. Goguen*, 415 U.S. 566, 575 (1974).

This "standardless sweep" is often a problem for antiloitering laws. The Supreme Court, the Ninth Circuit, and the Idaho Supreme Court have all struck down laws that have more than passing similarity to Boise's antiloitering ordinance. In *City of Chicago v. Morales*, 527 U.S. 41 (1999), the Supreme Court voided a Chicago ordinance designed to prevent gang members from loitering in

public spaces. It applied to groups of two or more people, at least one of whom was believed to be a gang member, who loitered in a public place and disobeyed an order to disperse. *Id.* at 47. The Chicago Police Department adopted further rules to limit police discretion, including detailed criteria for gang membership and enforcement only in designated areas with a high gang presence. *Id.* at 48-49. Nonetheless, the Court held that the ordinance lacked constitutionally sufficient enforcement guidelines. *Id.* at 64. Despite applying only to suspected gang members and those in their company, the ordinance imposed an "inherently subjective" standard that conferred "vast discretion" on police to define unlawful loitering—lawmaking "entrust[ed] to the moment-to-moment judgment of the policeman on his beat." *Id.* at 61-62 (quoting *Kolender*, 461 U.S. at 360).

Although Boise's antiloitering ordinance has a different focus and applies on private property, it suffers from the same core shortcoming as the provision at issue in *Morales*. The Boise ordinance has three elements: (1) "loitering, prowling, or wandering"; (2) on private property; and (3) "without lawful business, permission, or invitation." No Idaho state court has offered a narrowing construction, so the ordinance will be interpreted based purely on its text.[3] *See*

---

[3] The Idaho Supreme Court rejected a vagueness challenge to an earlier version of Boise's full disorderly conduct ordinance, which included the antiloitering provision currently
(Continued)

*Smiley v. Kansas*, 196 U.S. 447, 455 (1905). In defending the provision, the City focuses on the constraints of the "without lawful business" clause. Due to this limitation, the City argues, the ordinance merely prohibits "pausing or dallying on the property of another to engage in illegal conduct." *Def.'s Mem.* at 12, Dkt. 36-1. This suggests that a person could be arrested for loitering only if he intended to commit another crime. But, as the Supreme Court noted in *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972), the phrase "without lawful business" runs much more broadly and "may be a trap for innocent acts." *Id.* at 164.

*Papachristou* was a challenge to a Jacksonville ordinance that allowed various populations to be punished for vagrancy, including "[r]ogues and vagabonds," "common night walkers," and, most relevantly, "persons wandering or strolling around from place to place without any lawful purpose or object." *Id.* at 156 n.1. Despite the phrase "without any lawful purpose or object," the Court pointed out that the ordinance did not require "a specific intent to commit an

---

before this Court, along with various other prohibitions. *State v. Cobb*, 969 P.2d 244 (Idaho 1998). But the state court analyzed the disorderly conduct ordinance as a whole and did not offer any specific interpretation of the antiloitering provision. For this reason, *Cobb* does not offer a construction for this Court to utilize. Further, the *Cobb* court's conclusion is not persuasive because it ruled based on a legal standard that is no longer applicable—the bygone principle that a law is void for vagueness only if it "is impermissibly vague in all its applications." *Id.* at 199; *see Johnson v. United States*, 576 U.S. 591, 602 (2015) ("[O]ur *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.").

unlawful act." *Id.* at 163. There is a plain difference, in other words, between entering a property to do something illegal and entering a property without intending to engage in "lawful business." The expansiveness of the latter gives police immense discretion, and that is the point. "Definiteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution, although not chargeable with any particular offense." *Id.* at 166 (quoting *Winters v. New York*, 333 U.S. 507, 540 (1948)).

The Idaho Supreme Court voiced similar concerns about a Pocatello antiloitering ordinance in *State v. Bitt*, 798 P.2d 43 (Idaho 1990). That ordinance made it "unlawful for any person to loiter or prowl in a place at a time or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity." *Id.* at 47. The ordinance also required officers to "afford the actor an opportunity to dispel any alarm . . . by requesting him to . . . explain his presence and conduct." *Id.* The court held that the ordinance "vests complete discretion in the hands of the police officer to determine whether the person has provided a credible and reliable explanation. The ordinance therefore creates the potential for arbitrary and discriminatory arrests condemned in *Kolender,* and condemned by our State Constitution." *Id.* at 49. Although Boise's ordinance is not fully comparable—it lacks the "dispel alarm" provision,

which the state court found especially problematic—it provides police with an

analogous degree of discretion to determine what constitutes "lawful business."

The phrase "loiter, prowl, or wander" is similarly broad. In *Nunez v. City of*

*San Diego*, 114 F.3d 935 (9th Cir. 1997), the Ninth Circuit struck down a juvenile

curfew ordinance that made it "unlawful for any minor under the age of eighteen

(18) years, to loiter, idle, wander, stroll or play in or upon the public streets,"

subject to exceptions including "emergency errands," educational events, and work

obligations. *Id.* at 938. In holding that the law gave police excessive discretion, the

court focused on the ambiguity of the prohibited activities. "The phrase 'loiter,

wander, idle, stroll or play' uses imprecise terms," the court explained. *Id.* at 940.

"As a result, serious vagueness problems exist if 'loiter, wander, idle, stroll or

play' covers a narrower range of conduct than 'presence,' unless a sufficiently

definite narrowing construction is given." *Id.* at 940-41. The City of San Diego

tried to narrow the ordinance by arguing that it applied only to "aimless conduct,"

but the court brushed aside this interpretation because it remained "irreducibly

subjective." *Id.* at 943. The same subjectivity plagues Boise's prohibition on

"loitering, prowling, or wandering . . . without lawful business."

A case from the Nevada Supreme Court provides a final persuasive example.

In *State v. Richard*, 836 P.2d 622 (Nev. 1992) (per curiam), that court struck down

state and municipal antiloitering laws virtually identical to Boise's ordinance. The

laws at issue prohibited "loitering, prowling, or wandering upon the private property of another, without visible or lawful business with the owner or occupant thereof"—nearly a word-for-word match. *Id.* at 623 n.1. Though the court did not explain its reasoning at any length, it held that the provisions "lack articulable standards" and thus "fail to provide law enforcement officials with proper guidelines to avoid arbitrary and discriminatory enforcement." *Id.* at 629. For the reasons explained above, this is also true of Boise's antiloitering ordinance.

In sum, Boise City Code § 5-2-3(A)(2) does not provide sufficient standards to prevent arbitrary enforcement. The ordinance fails to coherently define unlawful loitering and instead vests police with tremendous discretion to determine when an individual's presence on private property becomes a crime. The vast sweep of the law contradicts basic principles of due process. For these reasons, the ordinance is unconstitutionally vague.

## ORDER

**IT IS ORDERED that:**

1.    Plaintiff's Motion for Partial Summary Judgment (Dkt. 30) is GRANTED.

2.    Defendant's Motion for Partial Summary Judgment (Dkt. 36) is DENIED.



DATED: August 25, 2025

_____

B. Lynn Winmill
U.S. District Court Judge